Kalama *v.* M. Kekuanaoa and John Ii, Guardians of V. Kamamalu.

## SUPREME COURT—IN BANCO.

### KALAMA *vs.* M. KEKUANAOA AND JOHN II, GUARDIANS OF VICTORIA KAMAMALU.

THE certificate of an award of the Land Commission, with its accompanying survey, are admissible in evidence, and when they appear to be genuine, are *prima facie* evidence of the right of the party in whose favor the certificate is issued.

The term " Kuleana noho pa," as used by the Land Commission, means nothing more than a right of residence during the life time of the party in whose favor the award was made.

The plaintiff originally presented a claim in her own name, but declared that she had no right in the land, being merely an occupant under the real heir. The Board granted an award to the latter, with the knowledge and acquiescence, as it appeared, of the plaintiff; upon an action brought, after the lapse of many years, to recover possession of the land, it was held she had no title in the premises, although her name, as owner or grantee of the lot, was incidentally used in the records of the Land Commission to designate the part where the heir should have his right of residence.

The decision of the Court was delivered by Judge ROBERTSON as follows :

This is an action of ejectment, brought to recover possession of a piece of land, or house lot, situated near the Fort, in Honolulu. The parties waived the right to a trial by jury and submitted the case to the decision of the Court, so far as the title to the land is concerned, and consented, for the sake of convenience, that judgment on that point might be given during the vacation, as of the last term, and that, if necessary, the question of damages should be submitted either to a jury or to referees.

The plaintiff alleges that the land was awarded to her by the Board of Commissioners, to quiet land titles, on the 8th of May, 1848, and produces as evidence of that fact a copy of the adjudication of the Board on Claim No. 14, covering the lot in question, which copy purports to have been made on the 7th of July, 1852, by C. Kamaio, one of the clerks of the Board. The defendants admit that they are in possession of the prem-

ises, but deny that the land was awarded to Kalama, or that she has any right or title to the same, and produce in evidence the records of the Land Commission, together with the original certificate and accompanying survey, usually delivered to claimants after the award was made by the Board, which certificate is signed by Kaehu, one of the clerks, dated the 14th of April, 1847, and certifies that a *kuleana noho pa*, in the lot in dispute, had been awarded to Kailio. The words *noho pa*, which occur twice in the certificate, are in the handwriting of Mr. Smith, the Secretary of the Board.

On referring to the Land Commission books, I find at page 23, of vol. 1, Register of Natives' Claims, Claim No. 14, Kalama presented to the Board in March, 1846, in which the plaintiff states that, on the 9th of March, she had been deprived of the possession of the house lot on which she alleges she had lived since the year 1816, and requests the Board to take cognizance of her case.

It appears that the land from which Kalama had been ejected is a portion of certain lands, afterwards known as Fort Lands, which were set apart, by Kaahumanu 1st, for the use of the military, when Liliha was deprived of the governorship of Oahu. It was accordingly claimed by Governor Kekuanaoa, before the Land Commission, as part of the property of the Hawaiian Government under his charge. The Land Commissioners had several hearings on the claim, and in April, 1847, made up their decision upon it, which decision is recorded at pages 79, 80 and 81, of volume 1st of Awards. After giving a summary of the case, and of the evidence, the Commissioners say, " Nolaila, ua maopopo keia. No ke aupuni ke kuleana nui ma ia pa. He hapakolu ko ke aupuni, e like me kona hapakolu iloko o na aina a pau, a no ke aupuni hoi ka lua o ka hapakolu i wahi e noho ai ke kanaka o ka papu. He kuleana alodio hoi ko ke aupuni, a pela hoi makou e hooko nei. No ke aupuni no ia pa. Ia Kailio nae ka noho pa e like me ka hoomalu ana o ke Kumukanawai." To this decision is annexed a survey of the entire lot, by metes and bounds, the bill of costs to be charged to the Government, and the signatures of the Commissioners.

It is contended by the counsel for the plaintiff that the Land Commission, by this adjudication, declared two-thirds of the

land to belong to the Government, and the remaining third to the adverse claimant. It is not absolutely necessary, perhaps, to the decision of the present action, that the Court should determine what was the precise nature of the right reserved in favor of the adverse claimant, as against the Government, the main question being, was that right, whether a fee simple, a thirty years' freehold, or a life interest, awarded to Kalama, or to Kailio ? But, as the expression of an opinion upon the collateral question will tend to render my decision of this case more easily understood than it otherwise would be, I shall give my opinion upon that question. I distinctly understand the judgment of the Land Commissioners to be, that the entire lot of land embraced in Claim No. 14, belongs by an allodial title to the Hawaiian Government ; but that the adverse claimant has a " kuleana noho pa," in said lot. This is clear from the words usd by the Commissioners : " No ke aupuni no ia pa. Ia Kailio nae ka *noho pa* e like me ka hoomalu ana o ke Kumuka-nawai ;" from the fact that the survey annexed to the award, and which, in every case, is to be taken as a part of the award, is a survey of the entire lot; and from the fact that the certificate issued to Kailio on the 10th of May, 1848, distinctly states that the right awarded is a " kuleana noho pa," in the middle third of the lot.

But, says the counsel for plaintiff, a " kuleana noho pa," means a fixed right of residence—a right of residence for ever —in other words, it is equivalent to a fee simple title. The learned counsel is clearly mistaken, and has evidently been misled by the similarity between the expression here used, " kuleana noho pa," and the expression *kuleana noho paa,* a fair translation of which would be, a fixed or secure right of residence. The term " kuleana noho pa," as it was used in the Land Commission, describes a species of right which was recognized only in a comparatively few cases of claims for house lots, in Honolulu and other towns, and means nothing more than a right of residence during the life time of the party in whose favor the award was made. It imports a mere life interest which the party could not, by paying a fixed commutation to the Government, as in case of the common freehold awards, turn into a fee simple. This will appear by reference

to the certificate presented as evidence in this case, in which the usual clause, giving the party the option of commuting for a fee simple title, is struck out.

Let us now proceed to the main question. Was the "kuleana noho pa," in one-third of the land, awarded to Kalama or to Kailio? It is argued, in substance, by the plaintiff's counsel, that the Land Commission records show the claim to have been presented by Kalama, in her own name and on her own behalf, and that by the final action of the Board, as recorded at page 178 of the first volume of Awards, the middle third of the land embraced in the controversy, was awarded to Kalama in her own name, without any reference to Kailio.

The Land Commission books do show that the claim, as originally presented and entered, purports to be the claim of Kalama. But on turning to pages 24 and 25 of the first volume of Evidence, where the testimony taken at the first hearing of the claim is recorded, under date of April 22d, 1846, the claim is entitled, "Helu 14, ka aina o Kailio," with the name of Kalama written over those words. It appears that in the course of the first hearing the Commissioners asked Kalama if she claimed to be the heir of her father, Kailio the elder, who formerly occupied the lot under Gov. Kuakini and Kinau, up to about the year 1840. Kalama replied that she was not the heir, but merely an occupant of the lot under Kailio the younger, a foster son of James Young Kanehoa, whom her father had declared to be his heir. The Board then passed a resolution to the effect that, as Kalama was not the heir of her father, she had no right to prosecute any claim to the land, but that if Kailio the younger, who was the real heir, should press the claim, they would attend to it. At pages 57 and 58 of the same volume, under date of June 16th, 1846, we find the testimony which was taken at the second hearing. The claim is here entitled, "Helu 14, Kailio." Following the Board in its course of proceeding, we come to pages 79 and 80 of the first volume of Awards, where we find the decision of the Board to which I have already referred. This decision is prefaced by a succinct statement showing the origin of the claim to be as far back as the year 1816, when the right of occupancy of the lot was given by the high chief Kalaimoku to Kahiamoe, a soldier, or officer of the

fort, after whose time the lot was occupied successively by his brothers Holokualani, and Kailio the elder, both of whom were soldiers.

" In the course of their summing up of the case, the Commissioners make the following statement, which has given rise to some discussion, viz: " ua ae mai o Kalama o Kailio ke keiki a Kahaanapilo ka hooilina, a ua koi mai oia i ka pa ma kona inoa, me ka ae mai hoi o Kailio, e like me kana i olelo mai ai imua o makou." The plaintiff's counsel says this means, in substance, that "Kalama has assented, or stated, that Kailio, the son of Kahaanapilo, should be her heir, and that with his consent she has claimed the land in her own name, as she stated in our presence." This is so evidently a bad translation that I shall not spend time in commenting upon it. I should say that, taking this passage in connection with Kalama's declaration that Kailio was heir to her father, made before the Commissioners on the 22d of April, 1846, to which it plainly refers, the meaning of it is this: "Kalama has admitted that Kailio, the child of Kahaanapilo, (Mrs. George Davis,) is the heir, and she has claimed the lot in his name, (or on his behalf,) with the consent of Kailio, as she has already stated in our presence." That this is the meaning of the Land Commissioners is clear, I think, from the fact that in their award, which was drawn up at the same time with the statement of the case, after declaring that the lot belongs to the Government, they say, " Ia Kailio nae ka noho pa," etc., that is to say, " to Kailio however belongs a right of residence," etc.; and also from the fact that, on the 22d of April, 1846, the Board had passed the resolution already referred to, declaring in effect that Kalama had no right whatever in the land, and that the claim must be prosecuted by Kailio, the real party in interest. But let us try another reading of this passage, and suppose it to mean that " Kalama has admitted that Kailio, the child of Kahaanapilo, is the heir, and she has presented the claim for the lot in her name, with the consent of Kailio, as she has already stated in our presence." Take this reading in connection with the declaration of Kalama, on the 22d of April, 1846, that Kailio, and not herself, was the real claimant, and in connection with the language of the Commissioners in giving their decision, that " to Kailio, however, be-

longs a right of residence," and is it not clear still that the Commissioners regarded Kalama, not as representing any right of her own, but only the rights of Kailio?

The counsel for plaintiff, who has argued the case with great ingenuity and ability, contends further, that the final judgment of the Board upon the claim was not given until the 8th of May, 1848, after the division of the lot by referees, when the middle third was declared to belong to Kalama. The record of the division is found on pages 178 and 179 of the first volume of Awards. Page 178, which contains the report of the referees, and the consequent action of the Board, is headed thus: "Claim 14, Kalama he wahine, (Kailio) continued from page 79." Page 179, which contains the survey accompanying the division, is headed thus: "Helu 14, ko Kailio hapakolu," that is, "No 14, Kailio's third." After stating that the referees had exceeded their powers by setting apart the *mauka* third for the adverse claimant, and reserving the other two-thirds for the Government, when their duty was merely to divide the lot into three parts and report the division to the Board, the Commissioners proceed to say, "We therefore give to Kalama, not the *mauka* third, nor the *makai* third, but the middle third, as described in the plan hereto annexed." Here, says the plaintiff's counsel, we have the latest action, the final decision of the Board in the matter, which must be taken just as it stands, and if it appears here that the award was finally made to Kalama, that must prevail, whether or not it be in accordance with the comments of the Commissioners on the case, or anything else that went before. That there is great force in this argument cannot be gainsaid, and if this were, indeed, the judgment of the Land Commissioners, settling the rights of the respective claimants in the land, and defining the quality of the estate which each claimant had in it, the argument must prevail. But this is not the judgment of the Commissioners on the rights of the parties, for that judgment was rendered in April, 1847, more than a year previous to the division of the land by metes and bounds, as here recorded, which division was merely an incidental transaction necessary to carry out the award previously made, by designating the part of the lot in which Kailio should have his right of residence, and the fact that Kalama's name

occurs here instead of Kailio's has no real weight. Further, the division of the land by metes and bounds was not the latest action of the Board in the matter, for after the division they issued, on the 10th of May, 1848, to Kailio, through their Secretary, as was usual and requisite in every case, a certificate stating that they had awarded to him a "kuleana noho pa" in the middle third of the lot as surveyed by G. Richardson.

The plaintiff's counsel objected at the hearing to the introduction of Kailio's certificate as evidence in the case, but the objection was overruled by the Court, for, in every case, the certificate of award with its accompanying survey, are admissible as evidence, and, in my opinion, when they appear to be genuine, they are at least *prima facie* evidence of the right of the party in whose favor the certificate was issued. Indeed, in some cases which have heretofore come before the Court, they have been the only evidence offered by such party. But, says the learned counsel, Kailio's certificate does not appear to be genuine—it is suspicious, being dated the 17th of April, 1847, more than a year previous to the final action of the Board on the claim.

The counsel for defendants having left the case on their part in the hands of the Court, without argument, I have been under the necessity, in order to meet the points raised by plaintiff's counsel, of examining closely the records of the Land Commission, and I find that the decision of the Board on the rights of the parties was made on the 17th of April, 1847, the date of the certificate, although the latter was not delivered till the 10th of May, 1848, after the division of the land. .That the award on this claim was made on the 17th of April, 1847, appears clear from the fact that the award on Claim No. 11, and that on Claim No. 16, the first immediately preceding, and the last succeeding, this award on the record, both bear that date, and the same date is still visible at the end of this award in pencil mark partially effaced, in the handwriting of the Secretary. The certificate is therefore correctly dated.

After a careful investigation of all the evidence in the case, I am clearly of opinion that the award of the Land Commissioners was made in favor of Kailio, and not Kalama. As has been shown, the Land Commissioners, on the 22d of April, 1846,

passed a resolution, based upon the deliberate declaration of Kalama herself, to the effect that she had no right in the land; on the 17th of April, 1847, they decided that Kailio was entitled to a right of residence for life on one-third of the land; and on the 10th of May, 1848, they issued to Kailio a certificate in accordance with that decision, which certificate the defendants now hold. Kalama has entirely failed to show any title to the premises, and therefore cannot recover possession thereof. After the passing of the resolution of April 22, 1846, by the Land Commissioners, Kalama was recognized by them merely as a sort of agent for Kailio; and the only reason why her name appears in the records, after that date, is that the claim, which was in fact Kailio's claim, was originally entered in the name of Kalama. It appears evident to me that at the time the award was made to Kailio, Kalama was well aware of it, and acquiesced in it, and why she should now, after the lapse of so many years, set up any pretensions to a title in the premises, is more than I can comprehend.

Let judgment be entered for the defendants with costs.

C. C. Harris, Esq., for plaintiff.

A. B. Bates, Esq., for defendants.

N. B.—The above Decision appeared in the "Polynesian" of Feb. 28, 1857, and is here produced in consequence of being omitted under the above year.